ASHLEY M. KOLEY, CA Bar No. 334723
akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071
TELEPHONE: 213.972.4535

R. SPENCER MONTEI, (*Pro Hac Vice Forthcoming*)
IL Bar No. 6313532
WI Bar No. 1087456
rmontei@foley.com
**FOLEY & LARDNER LLP**
321 N. CLARK STREET, SUITE 3000
CHICAGO, IL 60654
TELEPHONE: 312.832.4354

PAVAN AGARWAL, (*Pro Hac Vice Forthcoming*)
VA Bar No. 40351
DC Bar No. 459614
pagarwal@foley.com
**FOLEY & LARDNER LLP**
3000 K STREET, N.W. SUITE 600
WASHINGTON, D.C. 20007
TELEPHONE: 202.945.6162

*Attorneys for Plaintiff*
*RealD Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

REALD INC., a Delaware corporation,

Plaintiff,

vs.

HARKINS ENTERPRISES, INC., an Arizona corporation; HARKINS ADMINISTRATIVE SERVICES, INC., an Arizona corporation; HARKINS REEL DEALS, LLC, an Arizona limited liability company, d/b/a HARKINS THEATRES; HARKINS MORENO VALLEY, LLC, an Arizona limited liability company; HARKINS CHINO HILLS, LLC, an Arizona limited liability company; HARKINS CERRITOS, LLC, an Arizona limited liability company; and HARKINS REDLANDS, LLC, an Arizona limited liability company,

Defendants.

Case No. 2:26-cv-13124

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff RealD Inc. ("Plaintiff" or "RealD"), by and for its Complaint against Defendants Harkins Enterprises, Inc., Harkins Administrative Services, Inc., Harkins Reel Deals, LLC, Harkins Moreno Valley, LLC, Harkins Chino Hills, LLC, Harkins Cerritos, LLC, and Harkins Redlands, LLC (collectively, "Harkins" or "Defendants"), alleges to the Court as follows:

## NATURE OF THE ACTION

1. This is a civil action for infringement of U.S. Patent No. 7,857,455 ("the '455 patent") and U.S. Patent No. 8,220,934 ("the '934 patent") (collectively, the "Asserted Patents") arising under the United States Patent Laws, Title 35, United States Code § 100, *et seq.*, and in particular under § 271. RealD seeks damages, injunctive relief, attorneys' fees, and any other relief the Court deems just and proper.

2. This action arises out of Defendants' use of stereoscopic, or "3D," projection technology that infringes the Asserted Patents.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the patent laws of the United States.

4. This Court has specific personal jurisdiction over each Defendant because each Defendant has purposefully directed its activities at California, RealD's claims arise out of and relate to those activities, and the exercise of jurisdiction is reasonable and fair. Upon information and belief, each California Theater Defendant has engaged in the Accused Use (as defined below) at its theater in this District, and each Harkins Management Defendant has directed and controlled that Accused Use, including by selecting, procuring, installing, and/or authorizing the use of the CineBright (as defined below) at those theaters, by marketing and selling tickets to 3D showings there, and by receiving revenue derived from those showings. Defendants continued that conduct in California after RealD's March 2026 and August 2026 Notice Letters (as defined below) specifically identified the Lightspeed (DepthQ) 3D systems operating at Harkins locations and the CineBright as infringing the Asserted Patents.

5. In addition, and in the alternative, each Defendant's forum contacts are attributable to the other Defendants because, as alleged below, the Harkins Management Defendants control the day-to-day operations of the California Theater Defendants, each Defendant acts as the agent of the others in operating the Harkins theaters in this District, and Defendants are alter egos of one another.

6. Venue is proper in this District under 28 U.S.C. § 1400(b) as to each Defendant because each Defendant has committed acts of infringement in this District and has a regular and established place of business in this District. Each of the four Harkins theaters identified below is a physical place in this District from which Defendants exhibit motion pictures, including 3D motion pictures, on a regular, continuous, and established basis, and at which the Accused Use has occurred and continues to occur. Each theater is a permanent, multi-screen building at a fixed street address with a staffed box office and concession operations, is open to the public, and offers scheduled showings to the public daily.

7. Each theater is a regular and established place of business of the California Theater Defendant that owns and/or operates it and, upon information and belief, of each Harkins Management Defendant, which, as alleged below, holds the theaters out as its own under the "Harkins Theatres" name, employs and supervises theater personnel, possesses or controls the theater premises, and controls the 3D projection equipment used there, including the CineBright. The theaters are therefore places "of the defendant" for each Defendant within the meaning of 28 U.S.C. § 1400(b).

8. In addition, and in the alternative, because the California Theater Defendants are alter egos of the Harkins Management Defendants, as alleged below, the California Theater Defendants' places of business in this District are attributable to each Harkins Management Defendant for purposes of 28 U.S.C. § 1400(b).

**THE PARTIES**

9. RealD Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 246 S. Taylor Ave, Suite 100,

Louisville, Colorado 80027.

10. Upon information and belief, Defendant Harkins Enterprises, Inc., is a corporation organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

11. Upon information and belief, Defendant Harkins Administrative Services, Inc., is a corporation organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

12. Upon information and belief, Defendant Harkins Reel Deals, LLC, d/b/a Harkins Theatres is a limited liability company organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

13. Upon information and belief, Defendant Harkins Moreno Valley, LLC is a limited liability company organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

14. Upon information and belief, Defendant Harkins Chino Hills, LLC is a limited liability company organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

15. Upon information and belief, Defendant Harkins Cerritos, LLC is a limited liability company organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

16. Upon information and belief, Defendant Harkins Redlands, LLC is a limited liability company organized under the laws of Arizona with a principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona 85250.

17. Harkins Enterprises, Inc., Harkins Administrative Services, Inc., and Harkins Reel Deals, LLC are referred to collectively as the "Harkins Management Defendants." Harkins Moreno Valley, LLC, Harkins Chino Hills, LLC, Harkins Cerritos, LLC, and Harkins Redlands, LLC are referred to collectively as the "California Theater Defendants." Upon information and belief, each California Theater Defendant owns and/or operates the Harkins theater in this District that bears its name: (1) 600 Los Cerritos Center, Cerritos,

CA 90703 (Harkins Cerritos, LLC); (2) 3070 Chino Ave., Chino Hills, CA 91709 (Harkins Chino Hills, LLC); (3) 22350 Town Cir., Moreno Valley, CA 92553 (Harkins Moreno Valley, LLC); and (4) 27481 San Bernardino Ave., Redlands, CA 92374 (Harkins Redlands, LLC).

18. Upon information and belief, the Harkins entities identified above share common ownership, officers, directors, employees, offices, and finances; and the Harkins Management Defendants so dominate and control the policies and business practices of the California Theater Defendants, including the conduct alleged herein, that none of the Defendants has a separate mind, will, or existence of its own, and each is a mere instrumentality and alter ego of the others.

19. For example, each Harkins entity identified above maintains the same principal place of business at 8901 E. McDonald Drive, Scottsdale, Arizona.

20. Defendants also share common officers. For example, upon information and belief, Dan Harkins serves as an officer, director, and/or manager of multiple Defendants.

21. Upon information and belief, state corporate records identify either Harkins Enterprises, Inc. or Harkins Administrative Services, Inc. as the manager of each of Harkins Reel Deals, LLC and the California Theater Defendants. For example, those records identify Harkins Administrative Services, Inc. as the manager of Harkins Cerritos, LLC.

22. Each Defendant is registered with the California Secretary of State to transact business in California, and each lists 8901 E. McDonald Drive, Scottsdale, Arizona, as its principal office in its filings with the California Secretary of State.

23. Defendants operate and advertise the four theaters in this District under the common "Harkins Theatres" name, branding, and website (www.harkins.com), and, upon information and belief, through common loyalty programs and ticketing systems. Harkins Reel Deals, LLC is identified at the bottom of the webpage for each of those theaters. Through that website, Defendants advertise, and sell tickets to California customers for 3D showings at each of the four theaters in this District, and promote "DepthQ® CineBright

3D" as a premium format available at Harkins theaters.

24. Upon information and belief, the California Theater Defendants are not managed independent from the Harkins Management Defendants, and the Harkins Management Defendants possess or control the premises of the theaters in this District.

25. Upon information and belief, decisions concerning the 3D projection technology used across Harkins theaters, including the decisions to acquire, install, and operate the CineBright at the theaters in this District and to market "DepthQ® CineBright 3D" to customers, are made centrally by the Harkins Management Defendants, not by the California Theater Defendants. Consistent with this centralized control, RealD's notice letters concerning infringement at Harkins theaters, including theaters in this District, were directed to Harkins Theatres at Defendants' headquarters and Defendants' responses likewise came from headquarters.

26. Defendants are privately held, and information concerning their ownership, internal organization, intercompany agreements, and finances is peculiarly within Defendants' possession and control. RealD's allegations regarding Defendants' relationships are based on the publicly available information identified above, and RealD anticipates that further evidentiary support will be obtained through discovery, including jurisdictional and venue discovery if necessary.

## FACTUAL BACKGROUND

### A. RealD and Technology Background

27. RealD is a pioneer and leading innovator in developing and producing cutting-edge digital 3D technologies that enable premium viewing experiences in movie theaters and cinemas. As the world's premier visual technology innovator, RealD has the world's largest 3D cinema platform, with more than 22,000 screens installed in 72 countries.

28. RealD develops and commercializes 3D projection technologies for use by movie theaters and cinemas. In connection with those technologies, RealD's business model includes entering into license and leasing agreements with movie theater and cinema operators, including multi-year agreements for the use of RealD's 3D projection

technology and related equipment.

29. Of particular relevance to this case, RealD is engaged in developing and producing innovative 3D projection systems. RealD's offerings include 3D projection systems that practice the Asserted Patents, e.g., RealD XL, RealD XLW, and RealD U3D. RealD's patented technology enables movie theater and cinema operators to display stereoscopic films using passive polarization, achieving brighter projected images through efficient use of light energy that would otherwise be wasted. RealD's technology has set the de facto industry standard for 3D cinema projection efficiency.

30. RealD has invested millions of dollars into research and development to develop its innovative 3D projection technology. As a result of its history and dedication to innovation, RealD has been awarded numerous patents both in the United States and worldwide, including but not limited to the Asserted Patents.

**B. The Asserted Patents**

31. On December 28, 2010, the United States Patent and Trademark Office (the "USPTO") duly and lawfully issued U.S. Patent No. 7,857,455, entitled "Combining P and S Rays for Bright Stereoscopic Projection" and naming Matt Cowan, Lenny Lipton, and Jerry Carollo as inventors. A true and correct copy of the '455 patent is attached as **Exhibit 1**.

32. RealD is the assignee of the entire right, title, and interest in the '455 patent, including all rights to make, use, sell, offer for sale, and import products that practice the claims of the '455 patent. RealD also has the right to enforce and prosecute actions for infringement and to collect damages against infringers of the '455 patent. Defendants have no license or authorization to practice the technology of the '455 patent.

33. The '455 patent is generally directed to a method for multipath stereoscopic projection that uses a polarizing splitting element to divide image light energy into primary and secondary optical paths and employs optical components to modulate and direct the light toward a projection surface, to achieve improved stereoscopic image projection and image brightness.

34. Claim 16 of the ’455 patent recites as follows:

16. A method of projecting stereoscopic images, comprising: receiving image light energy;

splitting the image light energy received into a primary path of light energy transmitted along a primary path and a secondary path of light energy transmitted along a secondary path;

receiving secondary path light energy and directing reflected secondary path light energy toward a surface; and

uniformly modulating the polarization of the primary path of light energy into primary path modulated light energy, and transmitting primary path modulated light energy toward the surface.

35. On July 17, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,220,934, entitled “Polarization Conversion Systems for Stereoscopic Projection” and naming Miller H. Schuck, Michael G. Robinson, and Gary D. Sharp as inventors. A true and correct copy of the ’934 patent is attached as **Exhibit 2**.

36. RealD is the assignee of the entire right, title, and interest in the ’934 patent, including all rights to make, use, sell, offer for sale, and import products that practice the claims of the ’934 patent. RealD also has the right to enforce and prosecute actions for infringement and to collect damages against infringers of the ’934 patent. Defendants have no license or authorization to practice the technology of the ’934 patent.

37. The ’934 patent is generally directed to a 3D polarization conversion system having a polarization beam splitter, polarization rotator, and polarization switch subsystem that receive polarized light from a projector, separate the light into first and second optical paths, alter the polarization state of selected light bundles, and direct the light toward a projection screen such that the light paths substantially overlap to produce a brighter stereoscopic image that does not limit the size of the theater used for 3D applications.

38. Claim 2 of the ’934 patent depends from claim 1. Including with reference to

claim 1, claim 2 recites as follows:

> 1. A stereoscopic system comprising:
>
> a polarization beam splitter (PBS) operable to direct first light bundles having a first state of polarization (SOP) along a first light path, and direct second light bundles having a second SOP along a second light path;
>
> a polarization rotator located on the second light path, the polarization rotator being operable to translate the second SOP to the first SOP; and
>
> a polarization switch subsystem operable to receive first and second light bundles from the first and second light paths respectively, and to selectively translate both the polarization states of the first and second light bundles to one of a first output SOP and a second output SOP.
>
> 2. The stereoscopic system of claim 1, further comprising a reflector located on the second light path, operable to direct second light bundles to substantially similar locations on a projection screen as the first light bundles.

**C. The Defendants' Accused Infringement**

39. Upon information and belief, Defendants have used and continue to use in their theaters certain 3D projection technology embodied in a system known as the DepthQ CineBright product (the "CineBright"). Attached hereto as **Exhibit 3** is a true and correct copy of the DepthQ CineBright website at https://www.depthq.com/cinebright.html (last accessed Nov. 9, 2026). *See* Ex. 3 at 1.

40. Upon information and belief, the CineBright is supplied by Lightspeed Design, Inc. ("Lightspeed"). The CineBright is marketed as an "innovative, patented light recycling system" that "delivers a dramatically brighter 3D image" while "maintaining

DepthQ's superior optics, speed, sharp focus, low-crosstalk, advanced heat protection and 5 year optical warranty," and the CineBright is sold as a "high-brightness passive polarization solution for 3D digital cinema." *See* Ex. 3 at 2.

41. RealD previously pursued infringement proceedings in Germany concerning the CineBright. The German proceedings involved the German parts of European Patent Nos. EP 2,067,066 and EP 2,469,336. In the two publicly available judgment decisions, attached hereto as **Exhibit 4** and **Exhibit 5**, the German court found that the CineBright infringed those European patents. Ex. 4 ¶ 71; Ex. 5 ¶ 69. EP 2,067,066, attached hereto as **Exhibit 6**, is in the same patent family as the asserted '934 patent, and EP 2,469,336, attached hereto as **Exhibit 7**, is in the same patent family as the asserted '455 patent. *Compare* Ex. 2 at 1 (INID code (60)) *with* Ex. 6 at 1 (INID code (30)); *compare* Ex. 1 at 1 (INID codes (21)–(22)) *with* Ex. 7 at 1 (INID code (30)).

42. In the DepthQ CineBright brochure, attached hereto as **Exhibit 8**, Lightspeed states, "CineBright's unique design is now covered by patents in the United States, by U.S. Patent Nos. 9494805 B2 and 9693044 B2." Ex. 8 at 4. Based on Lightspeed's statements and information and belief, U.S. Patent Nos. 9494805 B2 (the "'805 patent") and 9693044 B2 (the "'044 patent") describe the structure and operation of the CineBright. As set forth in detail below, Defendants' use of the CineBright infringes the Asserted Patents.

43. The CineBright is a stereoscopic light recycling device used with a projector and a polarization-preserving projection screen to produce stereoscopic images.

44. The CineBright includes a beam splitter—a wire grid polarizing beam splitter—that receives image light from the projector lens and splits it into two orthogonally polarized paths: p-polarized light transmitted along a first light path and s-polarized light reflected toward a phase shifting optic along a second light path.

45. The CineBright further includes a phase shifting optic containing a phase shifting film that converts the polarization state of the light on the second path, and a polarizing modulator that receives light from both paths and selectively translates the polarization states to produce alternating left- and right-handed circular polarization in sync

with the projected stereoscopic image frames.

46. As shown below, Figure 7 of the '805 patent and the '044 patent, which share the same figures, illustrates the above description of the CineBright:

Fig. 7.




47. In addition, the CineBright is depicted on Lightspeed's website and in the photographs below (Ex. 3 at 2):








48. Upon information and belief, Defendants have installed, used, and continue to use, the CineBright and/or other products utilizing the same, substantially similar, or otherwise infringing technology at their theaters, including theaters within this District.

49. For example, Harkins Theatres, including the Moreno Valley 16 theater at 22350 Town Circle, Moreno Valley, California, advertised and/or advertises 3D movies, such as Avengers Endgame: Encore and Forgotten Island. The following image of Harkins' Moreno Valley theater website identifies the movie, theater location, and 3D format, and upon information and belief, the theater provides 3D showings by using an installed CineBright:




Source: Moreno Valley, Harkins Theatres, https://www.harkins.com/theatres/moreno-valley/2026-09-28 (last visited Sept. 15, 2026).

50. Defendants have actively marketed the CineBright to their customers, promoting "DepthQ® CineBright 3D" as an "[u]ltimate [i]mmersive [e]xperience" offering "[b]etter [c]ontrast" and "[h]igher [b]rightness." Attached hereto as **Exhibit 9** is a true and correct copy of Defendants' online advertisement at https://harkins.com/depthq-cinebright-3d (last accessed Oct. 1, 2026). *See* Ex. 9 at 1.

51. Defendants have infringed and continue to infringe the Asserted Patents including through at least the use of the CineBright and/or other 3D projection products utilizing the same or substantially similar or other infringing technology (collectively, the "Accused Use").

52. Defendants have made and continue to make extensive use of the technology described and claimed in the Asserted Patents. RealD has suffered economic harm as a result of Defendants' infringing activities in an amount to be proven at trial and is entitled to the relief identified in its Request for Relief in this Complaint.

**D. Defendants' Knowledge of Asserted Patents and Associated**

**Infringement**

53. On January 20, 2016, RealD sent Harkins Theatres a letter addressed to Dan Harkins concerning Harkins' use of 3D projection technology (the "2016 Notice Letter"). The 2016 Notice Letter informed Harkins that the United States International Trade Commission had issued an Initial Determination finding that certain MasterImage Horizon products infringed RealD patents, including the '455 and '934 patents. The letter further stated that MasterImage had identified Harkins as a customer, advised Harkins that, to the extent it possessed an infringing MasterImage Horizon product, RealD intended to vigorously enforce its patent rights against infringing uses of the identified 3D projection technology, and recommended that Harkins consult patent counsel regarding its legal rights.

54. Accordingly, Harkins received actual notice of the '455 and '934 patents and RealD's enforcement of those rights no later than January 20, 2016.

55. On March 10, 2026, RealD sent Harkins a further letter concerning the Lightspeed (DepthQ) 3D systems operating at Harkins locations (the "March 2026 Notice Letter"). The March 2026 Notice Letter stated that RealD had confirmed that a number of Harkins locations were operating 3D systems supplied by Lightspeed and marketed under the DepthQ brand. It further informed Harkins that, based on RealD's investigation, RealD believed that those installed systems infringed one or more claims of several identified RealD patents, including the '455 and '934 patents.

56. The March 2026 Notice Letter further expressly served as formal notice that continued operation in the United States of the Lightspeed (DepthQ) 3D systems infringed one or more claims of RealD's patents and advised that continued operation without RealD's authorization exposed Harkins to potential liability. RealD also expressly reserved all rights and remedies concerning past and ongoing infringement.

57. Harkins later received yet further notice of the Asserted Patents and specific notice that its use of the CineBright infringed those patents through RealD's August 3, 2026 Infringement Notice Letter (the "August 2026 Notice Letter").

58. In the August 2026 Notice Letter, RealD informed Harkins that its past use of the CineBright device warrants an award of monetary damages to RealD, and that Harkins' continued use of the CineBright product constitutes ongoing infringement that continues to injure RealD and must be stopped. RealD further demanded that Harkins immediately cease and desist from using the CineBright and any other product that infringes RealD's patents in the United States.

59. The August 2026 Notice Letter further advised Harkins that, while RealD recognized that Harkins may have acquired and installed the CineBright product without knowledge that the CineBright product infringed the Asserted Patents, any continued use of the CineBright would constitute willful infringement.

60. Given Defendants' common officers, management, principal place of business, and coordinated operation of the Harkins theaters, upon information and belief, the knowledge and notice conveyed through the 2016 Notice Letter, the March 2026 Notice Letter, and the August 2026 Notice Letter were shared among and/or otherwise attributable to all Defendants.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,857,455**

61. The allegations of each of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

62. The '455 patent is presumed valid and enforceable.

63. Upon information and belief, Harkins has engaged in the Accused Use within this District, directly infringing, either literally or under the doctrine of equivalents, one or more claims of the '455 patent in violation of 35 U.S.C. § 271(a), including at least claim 16, through their use of certain 3D projection technology, including but not limited to the use of the CineBright.

**A. The CineBright Infringes Claim 16 of the '455 Patent**

64. Defendants' use of the CineBright practices each element of claim 16 of the '455 patent. Such an exemplary infringing use is outlined below.

65. **Method of Projecting Stereoscopic Images.** To the extent the preamble is

limiting, claim 16 of the ’455 patent recites, “[a] method of projecting stereoscopic images.” The CineBright is a stereoscopic light recycling device used with a projector and a polarization-preserving projection screen to produce stereoscopic images. *See* ’805 patent, Figs. 1, 9, Col. 4:1–51; ’044 patent, Figs. 1, 9, Col. 4:5–56. Defendants’ use of the device necessarily performs the claimed method.

**Fig. 1.**




Source: ’805 patent, Fig. 1; ’044 patent, Fig. 1.

**Fig. 9.**



Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.




Source: Ex. 8 at 3.

Technical Specifications [1]

*Compatible with all DCI projectors*
*Optical light efficiency:* ***Up to 31%*** *
*Dark time:* ***50-350 µsec*** *(use fastest setting)*
*Maximum lamp/laser capacity:* ***56K Lumens***
*Compatible with all laser types*
*Maximum screen width at 30K Lum & 4.5 FL:* ***24.3 meters (79.7 ft)***
*Maximum screen width at 30K Lum & 6.0 FL:* ***21 meters (69 ft)***
*(25% overhead)*

*Model DPM-CBV2-DCI/EL3G*
*Throw ratio FLAT:* ***>= 1.36:1****; SCOPE:* ***>= 1.17:1***
*Model DPM-CBST-DCI/EL3G*
*Throw ratio FLAT:* ***>= 1.13:1****; SCOPE:* ***>= 1.13:1***
*Minimum throw distance:* ***11 meters (36.09 ft)***

*Contrast/Ghost:* ***>100:1 in each eye***
*HFR ready:* ***Yes, 192, 240 Hz and higher***
*Heat protection:* ***metallic pre-polarizer***
*Mount:* ***Includes leveler and automated 2D/3D actuator***
*Automation:*
***actuator triggered from external control signal, TCP/IP, auto or manual button***

*Warranty:* ***5 year optical, 3 year electronic***

*LC Switching time:* ***50 µsec (symmetrical)***
*LC Operating temp at optical surface:* ***+5° to 52° C (40° to 125° F)***
*Operating temperature not to exceed 52° C*
*Non-condensing/low humidity*

---

*Input voltage:* ***100-240VAC, 50-60 Hz***
*Input current:* ***900mA***
*Output voltage:* ***29VDC***
*Output current:* ***2A***

Source: Ex. 3 at 2–3.




Source: Ex. 3 at 3.

66. **Receiving Image Light Energy.** Claim 16 of the ’455 patent recites “receiving image light energy.” The CineBright includes a light converter that receives image light from the projector lens, thereby receiving image light energy. *See* ’805 patent, Fig. 1, 7, 9, Col. 4:22–51, Cols. 9:45–10:2, Col. 10:19–35; ’044 patent, Fig. 1, 7, 9, Col. 4:27–43, Cols. 9:51–10:8, Col. 10:25–41.

**Fig. 1.**




Source: ’805 patent, Fig. 1; ’044 patent, Fig. 1.

Fig. 7.




Source: ’805 patent, Fig. 7; ’044 patent, Fig. 7.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.




Source: Ex. 3 at 3.

67. **Splitting the Image Light Energy.** Claim 16 of the ’455 patent recites, “splitting the image light energy received into a primary path of light energy transmitted along a primary path and a secondary path of light energy transmitted along a secondary path.” The CineBright includes a beam splitter that receives image light from the projector lens and splits it into two orthogonally polarized paths: p-polarized light transmitted along a first (primary) light path, and s-polarized light reflected toward a phase shifting optic along a second (secondary) light path. *See* ’805 patent, Figs. 7, 9, 14B, Col. 4:22–38, Col. 10:19–35, Col. 13:28–41; ’044 patent, Figs. 7, 9, 14B, Col. 4:27–33, Col. 10:25–41, Col. 13:33–46.

Fig. 7.




Source: ’805 patent, Fig. 7; ’044 patent, Fig. 7.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.

Fig. 14B.




Source: ’805 patent, Fig. 14B; ’044 patent, Fig. 14B.

68. **Receiving and Directing Secondary Path Light Energy.** Claim 16 of the ’455 patent recites, “receiving secondary path light energy and directing reflected secondary path light energy toward a surface.” The CineBright includes a phase shifting optic that receives s-polarized light from the secondary path and reflects converted p-polarized light toward the polarizing modulator and projection screen, thereby directing secondary path light energy toward the projection surface. *See* ’805 patent, Figs. 9, 14B, Col. 4:22–51, Col. 10:36–50, Col. 13:28–41; ’044 patent, Figs. 9, 14B, Col. 4:27–56, Col. 10:42–56, Col. 13:33–46.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.




Source: ’805 patent, Fig. 14B; ’044 patent, Fig. 14B.




Source: Ex. 5 ¶ 35.

69. **Uniformly Modulating the Polarization.** Claim 16 of the ’455 patent recites, “uniformly modulating the polarization of the primary path of light energy into primary path modulated light energy, and transmitting primary path modulated light energy toward the surface.” The CineBright includes a polarizing modulator positioned in front of the light converter, directly in the p-polarized primary path. The modulator receives the primary path light directed through beam splitter and electronically switches the

polarization orientation of the p-polarized primary path light, converting it to alternating handedness of circular light in sync with the projected left and right stereoscopic images. After modulation, the circularly polarized primary path light exits the polarizing modulator and is projected onto the polarization-preserving projection screen. *See* ’805 patent, Figs. 1, 8, 9, Col. 4:22–38, Col. 10:3–50, Col. 11:18–35; ’044 patent, Figs. 1, 8, 9, Col. 4:27–43, Col. 10:9–56, Col. 11:23–40.

**Fig. 1.**




Source: ’805 patent, Fig. 1; ’044 patent, Fig. 1.

Fig. 8.




Source: ’805 patent, Fig. 8; ’044 patent, Fig. 8.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.




Source: Ex. 8 at 3.

Technical Specifications [1]

*Compatible with all DCI projectors*
*Optical light efficiency:* ***Up to 31%*** *
*Dark time:* ***50-350 µsec*** *(use fastest setting)*
*Maximum lamp/laser capacity:* ***56K Lumens***
*Compatible with all laser types*
*Maximum screen width at 30K Lum & 4.5 FL:* ***24.3 meters (79.7 ft)***
*Maximum screen width at 30K Lum & 6.0 FL:* ***21 meters (69 ft)***
*(25% overhead)*

*Model DPM-CBV2-DCI/EL3G*
*Throw ratio FLAT:* ***>= 1.36:1***; *SCOPE:* ***>= 1.17:1***
*Model DPM-CBST-DCI/EL3G*
*Throw ratio FLAT:* ***>= 1.13:1***; *SCOPE:* ***>= 1.13:1***
*Minimum throw distance:* ***11 meters (36.09 ft)***

*Contrast/Ghost:* ***>100:1 in each eye***
*HFR ready:* ***Yes, 192, 240 Hz and higher***
*Heat protection:* ***metallic pre-polarizer***
*Mount:* ***Includes leveler and automated 2D/3D actuator***
*Automation:*
***actuator triggered from external control signal,***
***TCP/IP, auto or manual button***

*Warranty:* ***5 year optical, 3 year electronic***

*LC Switching time:* ***50 µsec (symmetrical)***
*LC Operating temp at optical surface:* ***+5° to 52° C (40° to 125° F)***
*Operating temperature not to exceed 52° C*
*Non-condensing/low humidity*

---

*Input voltage:* ***100-240VAC, 50-60 Hz***
*Input current:* ***900mA***
*Output voltage:* ***29VDC***
*Output current:* ***2A***

Source: Ex. 3 at 2–3.




Source: Ex. 3 at 3.

70. The foregoing allegations are exemplary and without prejudice to the full scope of infringement by Defendants of the Asserted Patents.

71. Defendants will continue to infringe the ’455 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause RealD to suffer damages in an amount to be determined, and have caused and are causing RealD irreparable harm. RealD has no adequate remedy at law against Defendants’ acts of infringement and, unless Defendants are enjoined from their infringement of the ’455 patent, RealD will continue to suffer irreparable harm.

72. RealD is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the ’455 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

73. Defendants’ infringement of claim 16 of the ’455 patent has been and continues to be willful. Defendants had actual knowledge of the ’455 patent no later than the receipt of the 2016 Notice Letter. Defendants received further notice through the March 2026 Notice Letter that their operation of Lightspeed (DepthQ) 3D systems infringed one or more claims of identified RealD patents, including the ’455 patent. Defendants received yet further notice through the August 2026 Notice Letter that their use of the CineBright infringed the ’455 patent and that continued use would constitute willful infringement. Despite that knowledge, Defendants have continued their infringing uses, including using the CineBright. Defendants knew or should have known of the objectively high likelihood that their actions infringed the ’455 patent. Defendants nevertheless continued to infringe deliberately, intentionally, and with reckless disregard for RealD’s patent rights. Defendants’ infringement of the ’455 patent has been and continues to be willful, deliberate, and egregious. RealD is therefore entitled to enhanced damages under 35 U.S.C. § 284. This case is also exceptional, and RealD is entitled to its reasonable attorneys’ fees under 35 U.S.C. § 285.

74. RealD has met its obligations under 35 U.S.C. § 287 by marking its patented articles in a consistent and substantially continuous manner with reference to RealD’s

website at https://reald.com/patents/, which identifies the ’455 patent.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 8,220,934**

75. The allegations of each of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

76. The ’934 patent is presumed valid and enforceable.

77. Upon information and belief, Defendants have engaged in the Accused Use within this District, directly infringing, either literally or under the doctrine of equivalents, one or more existing claims of the ’934 patent in violation of 35 U.S.C. § 271(a), including at least claim 2, through their use of certain 3D projection technology, including but not limited to the use of the CineBright.

**A. The CineBright Infringes Claim 2 of the ’934 Patent**

78. The Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a) one or more claims of the ’934 patent, including at least claim 2, through their use of certain 3D projection technology, including but not limited to the use of the CineBright. For the exemplary infringement by using CineBright, as supported by Lightspeed’s own ’805 patent and ’044 patent, which Lightspeed has represented cover the CineBright, Defendants’ use of the CineBright practices each element of claim 2 of the ’934 patent. Such an exemplary infringing use is outlined below.

79. **Stereoscopic System.** To the extent the preamble is limiting, claim 2 (through its dependency on claim 1) of the ’934 patent recites, “[a] stereoscopic system.” The CineBright is a stereoscopic light recycling device used with a projector and a polarization-preserving projection screen to produce stereoscopic images. *See* ’805 patent, Fig. 1, Col. 4:1–51; ’044 patent, Fig. 1, Col. 4:5–56.

Fig. 1.




Source: ’805 patent, Fig. 1; ’044 patent, Fig. 1.




Source: Ex. 8 at 2.




Source: Ex. 8 at 3.




Source: Ex. 3 at 3.

80. **Polarization Beam Splitter (PBS).** Claim 2 (through its dependency on claim 1) recites, "a polarization beam splitter (PBS) operable to direct first light bundles having a first state of polarization (SOP) along a first light path, and direct second light bundles having a second SOP along a second light path." The CineBright includes a beam splitter that directs p-polarized first light bundles along a first light path and directs s-polarized second light bundles along a second light path. *See* '805 patent, Fig. 9, Cols. 5:42–6:12, Col. 10:19–50; '044 patent, Fig. 9, Cols. 5:47–6:10, Col. 10:25–56.

Fig. 9.




Source: '805 patent, Fig. 9; '044 patent, Fig. 9.

81. **Operable Polarization Rotator Located on the Second Light Path.** Claim 2 (through its dependency on claim 1) recites, "a polarization rotator located on the second light path, the polarization rotator being operable to translate the second SOP to the first SOP." The CineBright includes a phase shifting optic located on the second light path. The phase shifting optic includes a phase shifting film that receives s-polarized light from the second light path and converts it to p-polarized light, translating the second SOP to the first SOP. *See* '805 patent, Figs. 3A, 9; Col. 6:32–50, Col. 10:19–50; '044 patent, Figs. 3A, 9, Col. 6:37–55; Col. 10:25–56.

Fig. 3A.




Source: '805 patent, Fig. 3A; '044 patent, Fig. 3A.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.

82. **Polarization Switch Subsystem.** Claim 2 (through its dependency on claim 1) recites, “a polarization switch subsystem operable to receive first and second light bundles from the first and second light paths respectively, and to selectively translate both the polarization states of the first and second light bundles to one of a first output SOP and a second output SOP.” The CineBright includes a polarizing modulator that receives both the p-polarized first light bundles from the first path and the converted p-polarized second light bundles from the second path, and selectively translates both to alternating left- and right-handed circular polarization states in sync with projected left and right stereoscopic image frames. *See* ’805 patent, Figs. 8, 9, Col. 10:3–50; ’044 patent, Figs. 8, 9, Col. 10:9–56.

Fig. 8.




Source: ’805 patent, Fig. 8; ’044 patent, Fig. 8.

Fig. 9.




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.



Source: Ex. 3 at 3.




Source: Ex. 3 at 3.

83. **Operable Reflector Located on the Second Light Path.** Claim 2 recites that the stereoscopic system further comprises, "a reflector located on the second light path, operable to direct second light bundles to substantially similar locations on a projection screen as the first light bundles." The CineBright includes a polarization-preserving reflective surface located on the second light path that reflects the converted second light bundles toward the projection screen at substantially similar locations as the first light bundles. The two stereoscopic images are substantially aligned on the screen. *See* '805

patent, Figs. 1, 3A, 9, Col. 4:1–51, Col. 6:32–50, Col. 10:19–50; ’044 patent, Figs. 1, 3A, 9, Col. 4:5–56, Col. 6:37–55, Col. 10:25–56.

Fig. 1.




Source: ’805 patent, Fig. 1; ’044 patent, Fig. 1.

Fig. 3A.




Source: ’805 patent, Fig. 3A; ’044 patent, Fig. 3A.

**Fig. 9.**




Source: ’805 patent, Fig. 9; ’044 patent, Fig. 9.




Source: Ex. 5 ¶ 35.



Source: Ex. 3 at 3.

84. The foregoing allegations are exemplary and without prejudice to the full scope of infringement by Defendants of the Asserted Patents.

85. Defendants will continue to infringe the ’934 patent unless and until they are enjoined by this Court. Defendants, by way of their infringing activities, have caused and continue to cause RealD to suffer damages in an amount to be determined, and have caused and are causing RealD irreparable harm. RealD has no adequate remedy at law against Defendants’ acts of infringement and, unless Defendants are enjoined from their infringement of the ’934 patent, RealD will continue to suffer irreparable harm.

86. RealD is entitled to recover from Defendants damages at least in an amount adequate to compensate for their infringement of the ’934 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

87. Defendants’ infringement of claim 2 of the ’934 patent has been and continues to be willful. Defendants had actual knowledge of the ’934 patent no later than the receipt of the 2016 Notice Letter. Defendants received further notice through the March 2026 Notice Letter that their operation of Lightspeed (DepthQ) 3D systems infringed one or more claims of identified RealD patents, including the ’934 patent. Defendants received yet further notice through the August 2026 Notice Letter that their use of the CineBright infringed at least claim 2 of the ’934 patent and that continued use would constitute willful

infringement. Despite that knowledge, Defendants have continued their infringing uses, including using the CineBright. Defendants knew or should have known of the objectively high likelihood that their actions infringed valid claims of the ’934 patent. Defendants nevertheless continued to infringe deliberately, intentionally, and with reckless disregard for RealD’s patent rights. Defendants’ infringement of valid claims, e.g., at least claim 2, of the ’934 patent has been and continues to be willful, deliberate, and egregious. RealD is therefore entitled to enhanced damages under 35 U.S.C. § 284. This case is also exceptional, and RealD is entitled to its reasonable attorneys’ fees under 35 U.S.C. § 285.

88. RealD has met its obligations under 35 U.S.C. § 287 by marking its patented articles in a consistent and substantially continuous manner with reference to RealD’s website at https://reald.com/patents/, which identifies the ’934 patent.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), RealD requests a jury trial on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, RealD respectfully requests the following relief:

A. an adjudication that RealD’s rights in the Asserted Patents (for all claims presently enforceable) are valid and enforceable;

B. a judgment on the Complaint in favor of RealD and against Defendants;

C. a judgment that Defendants have infringed, either literally and/or under the doctrine of equivalents, one or more claims of the Asserted Patents;

D. the issuance of an injunction under 35 U.S.C. § 283, enjoining Defendants’ infringement of the Asserted Patents;

E. an award of damages sustained as a result of Defendants’ infringement of the Asserted Patents in an amount to be determined at trial, as provided under 35 U.S.C. § 284, including lost profits suffered by RealD and/or in an amount not less than a reasonable royalty;

F. a finding that Defendants' infringement of the Asserted Patents has been and continues to be willful;

G. an award of enhanced damages under 35 U.S.C. § 284 for Defendants' willful infringement of the Asserted Patents;

H. an accounting for Defendants' infringing acts not presented at trial and an award by the Court of additional damages based on such infringing acts;

I. an award of pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

J. a finding that this is an exceptional case under 35 U.S.C. § 285;

K. an award of reasonable attorneys' fees and costs incurred in connection with this action; and

L. an award of any such other and further relief as the Court may deem just and proper.

DATED: November 9, 2026

**FOLEY & LARDNER LLP**
R. Spencer Montei
Pavan Agarwal
Ashley M. Koley

/s/ Ashley M. Koley
Ashley M. Koley
Attorneys for Plaintiff
RealD Inc.